**CLARK, MIZE & LINVILLE, CHTD.**
129 S. Eighth, P.O. Box 380
Salina, Kansas 67402-0380
785-823-6325 FAX 785-823-1868

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RAFIK BENAISSA, M.D. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:19-CV-04080 |
| ) | |
| SALINA REGIONAL ) | |
| HEALTH CENTER, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |

### DEFENDANT'S MEMORANDUM IN SUPPORT
### OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT

COMES NOW, the defendant, Salina Regional Health Center, Inc., by and through its attorneys, Peter S. Johnston and Jared T. Hiatt of Clark, Mize & Linville, Chartered, Salina, Kansas, and, pursuant to Federal Rule of Civil Procedure 56 and D. Kan. R. 56.1, respectfully submits this Memorandum in Support of its Renewed Motion for Summary Judgment on Plaintiff's claim that he was terminated in violation of Title VII of the Civil Rights Act, or retaliated against in violation of Kansas law.

### I.     INTRODUCTION

This is purported to be a wrongful termination/retaliation case.  Plaintiff Rafik Benaissa, M.D. (hereinafter "Dr. Benaissa" or "Plaintiff") claims that he was employed by Salina Regional Health Center, Inc. ("SRHC") and that he was unlawfully terminated and/or retaliated against because of his race, his religion, his national origin, his referral of patients to another hospital, and/or concerns he allegedly raised about SRHC's adherence to "applicable standards".

The fact is Dr. Benaissa was never SRHC's employee. He was a locum tenens provider assigned to SRHC pursuant to a contract between SRHC and a company called "LocumTenens.com." SRHC exercised its contractual right with LocumTenens.com to stop accepting assignments for Dr. Benaissa because it had concerns about the number of fasciotomies he was performing. Because Dr. Benaissa was plainly not SRHC's employee, SRHC is asking the Court to grant summary judgment and to assess costs and attorney's fees against Dr. Benaissa pursuant to 42 U.S.C. § 1988(b).

SRHC previously moved the Court for summary judgment as to all claims (ECF 21), which the Court denied without prejudice to refiling by SRHC following discovery on the issue of whether Dr. Benaissa was an employee of SRHC (ECF 33). The parties have conducted that focused discovery, which has produced no fact suggesting that Dr. Benaissa was ever an employee SRHC. Accordingly, SRHC now makes this Motion for Summary Judgment.

## II. STATEMENT OF FACTS[1]

1. Plaintiff's Complaint contains three Counts alleging that Plaintiff suffered unlawful discrimination on the basis of his race, religion, and national origin, all under Title VII of the Civil Rights Act, followed by a final Count entitled "Retaliation". (See Complaint, ECF 1 – generally)

2. Defendant SRHC, is a not-for-profit hospital in Salina, Kansas with a medical staff and peer review committees that include physicians who are employed by SRHC and physicians who are not employed by SRHC and physicians who indeed are in competing practice groups or economic competition with one another. (ECF 1, ¶ 2; ECF 26-2, ¶ 4)

3. Plaintiff Dr. Benaissa is a board-certified orthopedic surgeon with 22 years of experience in orthopedic trauma and orthopedic infections. (ECF 1, ¶ 5)

---

[1] The facts stated herein are solely for purposes of this Motion for Summary Judgment. Defendant reserves the right to contest any and all facts alleged by plaintiff in further pleadings or at trial.

4. SRHC contracted with a company in Alpharetta, Georgia called "LocumTenens.com" under which LocumTenens.com assigned physicians (called "Contractors" in the Agreement) to work temporarily at SRHC – one of those physicians was the Plaintiff. (See ECF 23-1, ¶ 3; see also LocumTenens.com Client Agreement (ECF 26-1))

5. Colette Sorell is the Director of Clinical Operations for SRHC and is responsible for ensuring that SRHC has adequate locum coverage. (See Exhibit A, Colette Sorell depo., p. 14, ll. 5-7; p. 15, l. 10 - p. 16, l. 12)

6. Ms. Sorell testified that SRHC contracts with locums for both short and long-term coverage, depending on the need. (Exhibit A, Sorell depo., p. 16, l. 13 - p. 17, l. 18)

7. Ms. Sorell testified that when SRHC contracts with a locum for longer-term coverage, it is typically because they need locum coverage while SRHC attempts to find permanent coverage for the position. (Exhibit A, Sorell depo., p. 17, ll. 11-18)

8. In Plaintiff's case, SRHC contracted with LocumTenens.com because it was down to one orthopedic surgeon and thus needed coverage in that area. (Exhibit A, Sorell depo., p. 22, ll. 7-10)

9. SRHC's contract with LocumTenens.com for Plaintiff's services was intended to be a short-term situation while SRHC recruited for a permanent placement. (Exhibit A, Sorell depo., p. 32, ll. 6-11)

10. At the time SRHC contracted with LocumTenens.com for Dr. Benaissa's services, Dr. Benaissa was a permanent resident of Monte Carlo, Monaco and had active or recently active medical licenses in eleven different states. (See Plaintiff's Curriculum Vitae, attached hereto as Exhibit B)

11. According to an email from Plaintiff to SRHC, Plaintiff also had staff privileges at several other hospitals in addition to SRHC. (See ECF 23-9)

12. On or about February 1, 2018, Plaintiff began providing services as an orthopedic surgeon at SRHC pursuant to SRHC's contract with LocumTenens.com. (See ECF 1, ¶ 6; see also ECF 23-1, ¶ 4)

13. For his services at SRHC, Plaintiff was paid by LocumTenens.com, not SRHC. (See ECF 26-1 – Agreement, § 2.3)

14. Under SRHC's Agreement with LocumTenens.com, SRHC agreed to pay LocumTenens.com a specified fee for the services of the assigned providers, including Plaintiff. (ECF 26-1 – Agreement, §§ 4.1 - 4.6)

15. Under SRHC's Agreement with LocumTenens.com:

   A. LocumTenens.com was responsible for sourcing, screening and selecting Dr. Benaissa (Agreement, § 2.1);

   B. LocumTenens.com was responsible for paying Dr. Benaissa (Agreement, § 2.2);

   C. LocumTenens.com was responsible for providing Dr. Benaissa's medical malpractice insurance (Agreement, § 2.3);

   D. Dr. Benaissa was an independent contractor of LocumTenens.com and not an employee of SRHC (Agreement, § 7.0);

   E. SRHC was not responsible for tax withholding, employee social security payments, workers' compensation insurance, unemployment insurance or health insurance (Agreement, § 7.0);

   F. Dr. Benaissa was solely responsible for all his own medical, healthcare and clinical decisions (Agreement, § 7.0); and

   G. SRHC was permitted to request that any locum tenens provider assigned to practice at the hospital through LocumsTenens.com, including Dr. Benaissa, be removed from service for any reason upon 30 days' written notice to LocumTenens.com (Agreement, § 5.1).

16. All employed physicians at SRHC have a written employment agreement. Plaintiff had no such agreement because he was not an employee. (See ECF 23-2, ¶¶ 4-5)

17. All employed physicians at SRHC are offered employment benefits such as health and dental insurance, retirement benefits and paid time off. SRHC offered no such employment benefits to Plaintiff and Plaintiff was not eligible for such employment benefits under SRHC's policies because he was not SRHC's employee. (ECF 23-2, ¶¶ 6-7)

18. Plaintiff and other locums were not required to attend the monthly POC meetings that the employed physicians attended. (See Exhibit C, Robert Freelove M.D. deposition, p. 25, l. 10 - p. 26, l. 5)

19. Locum tenens at SRHC provide coverage for specific specialties during specific time frames, but otherwise, they have complete autonomy in determining what work needs to be done with respect to the patients they see. (Exhibit C, Freelove Affidavit, p. 17, l. 15 - p. 18, l. 6)

20. SRHC worked directly with LocumTenens.com, not Plaintiff, to schedule Plaintiff's shifts at SRHC. (ECF 23-1, ¶¶ 8-9; ECF 23-3; See also Exhibit A, Sorell depo., p. 30, l. 21 - p. 31, l. 9)

21. While SRHC supplied some of the medical tools Plaintiff used for surgeries, Plaintiff was also able to request specific tools and equipment based upon his personal preferences. (Exhibit C, Dr. Freelove depo., p. 24, ll. 2-22)

22. SRHC made no monetary payments to Plaintiff and issued no IRS form W2 to Plaintiff. (ECF 23-1, ¶ 7; ECF 23-2, ¶ 8)

23. On his tax returns for 2018, Plaintiff did not list SRHC as his employer or as having issued any Form W2 or Form 1099 to him and, in fact, Plaintiff submitted tax forms attesting that his income was derived from his sole proprietorship as an orthopedic surgeon with a business

address of Monte Carlo, Monaco. Plaintiff also claimed $224,727.00 in business related expenses for his sole proprietorship during the year he provided services at SRHC. (See Exhibit D, excerpts from Plaintiff's 2018 Tax returns, submitted by Plaintiff in response to Defendant's Request for Production of Documents).

24. There were discussions between Plaintiff and SRHC about the possibility of Plaintiff becoming an employed physician at SRHC, but Plaintiff specifically indicated that he wanted to remain a locum because of the scheduling flexibility that comes with being a locum. (See Exhibit E, Affidavit of Brandie Nelson, Physician Recruitment, and Exhibit 1 thereto).

25. Plaintiff filed an EEOC Charge against SRHC alleging that SRHC discriminated and retaliated against him on the basis of his race, religion and/or national origin in violation of Title VII of the Civil Rights Act. (See Exhibit D)

26. Plaintiff's EEOC Charge was dismissed based upon lack of jurisdiction when the EEOC concluded there was no employer/employee relationship between Plaintiff and SRHC. (See Exhibit D)

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231–32 (10th Cir. 2001) (*citing Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there

is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding,* 279 F.3d at 904 (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (*citing Adler,* 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* 279 F.3d at 904 (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)); *Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327 (*quoting* Fed.R.Civ.P. 1).

7

### III. ARGUMENTS AND AUTHORITIES

#### A. Plaintiff's Title VII Claim Fails Because SRHC was not Plaintiff's Employer.

Title VII does not protect independent contractors. *See Brackens v. Best Cabs, Inc.*, 146 F. App'x 242, 244 (10th Cir. 2005). Whether a person is an employee under Title VII is a question of federal law. *Lambertsen v. Utah Dep't of Corr.*, 922 F. Supp. 533, 536 (D. Utah 1995), *aff'd,* 79 F.3d 1024 (10th Cir. 1996). Courts attempting to distinguish between employees and independent contractors in Title VII cases most often use the "hybrid test", which focuses primarily on the employer's right to control the means and manner of the worker's performance. *Id*. at 537. Other factors the courts examine under the hybrid test are: (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. *McPherson v. HCA-HealthOne, LLC.*, 202 F. Supp. 2d 1156, 1166 (D. Colo. 2002).

Numerous courts have held that physician plaintiffs such as Dr. Benaissa are independent contractors, not employees for purposes of Title VII. *See e.g. McPherson v. HCA-HealthOne, LLC.*, 202 F. Supp. 2d 1156, 1167 (D. Colo. 2002)(doctor with staff privileges at several hospitals who was not paid by the hospital and received no benefits from the hospital was an independent contractor); *Alexander v. Rush North Shore Medical Center,* 101 F.3d 487, 493-94 (7th Cir. 1996)

(doctor that never received any compensation, paid vacation, private office space, or any other paid benefits from hospital and who had the authority to exercise independent discretion concerning the care delivered to patients was an independent contractor); *Lutfi, M.D. v. Brighton Community Hospital Ass'n,* 40 P.3d 51, 56 (Colo. App. 2001) (physician found to be independent contractor and not hospital's employee where the contract expressly provided that there was no employer/employee relationship and that physician, not hospital, was responsible for the manner and method of providing professional services to patients); *Diggs v. Harris Hospital–Methodist, Inc.,* 847 F.2d 270, 273 (5th Cir. 1988) (holding that physician with staff privileges did not qualify as an employee for purposes of Title VII even where the hospital supplied the tools, staff and equipment used by the physician and imposed standards upon those permitted to have staff privileges at the hospital); *Pamintuan, M.D. v. Nanticoke Memorial Hospital,* 1997 WL 129338 at 10-11 (D. Del. 1997) (holding that plaintiff physician did not qualify as employee under Title VII even where her association with the hospital was longstanding and where she alleged that the hospital's actions prevented her from getting work at other hospitals); *Nanavati, M.D. v. Burdette Tomlin Memorial Hospital,* 1986 WL 15318 (D. N.J. 1986) (holding that the degree of control the hospital had over the doctor's work performance, the nature of the medical doctor's occupation, and the specific economics of the relationship between the doctor and the hospital all suggested that the doctor's relationship to the hospital was one of an independent contractor rather than an employee).

As noted above, Dr. Benaissa was a locum tenens provider assigned to SRHC pursuant to an Agreement between SRHC and LocumTenens.com. Under the terms of the Agreement:

- LocumTenens.com was responsible for sourcing, screening and selecting Dr. Benaissa (Agreement, § 2.1);

- LocumTenens.com was responsible for paying Dr. Benaissa (Agreement, § 2.2);

9

- LocumTenens.com was responsible for providing Dr. Benaissa's medical malpractice insurance (Agreement, § 2.3);

- Dr. Benaissa was an independent contractor of LocumTenens.com and not an employee of SRHC (Agreement, § 7.0);

- SRHC was not responsible for tax withholding, employee social security payments, workers' compensation insurance, unemployment insurance or health insurance (Agreement, § 7.0);

- Dr. Benaissa was solely responsible for all his own medical, healthcare and clinical decisions (Agreement, § 7.0); and

- SRHC was permitted to request that any locum tenens provider assigned to practice at the hospital through LocumsTenens.com, including Dr. Benaissa, be removed from service for any reason upon 30 days' written notice (Agreement, §5.1).

(SOF 15; ECF 26-1)

SRHC contracted with LocumTenens.com for Plaintiff's services because it was short-staffed on orthopedic surgeons and needed someone to provide coverage while SRHC searched for a permanent placement. (SOF 5-8) SRHC's contract with LocumTenens.com was intended to be short-term while SRHC recruited a permanent placement. (SOF 9) At the time SRHC contracted with LocumTenens.com for Plaintiff's services, Plaintiff was a permanent resident of Monte Carlo, Monaco and had active or recently active medical licenses in eleven different states. (SOF 10) Likewise, Plaintiff had staff privileges at other hospitals – not just SRHC. (SOF 11)

The Agreement between SRHC and LocumTenens.com explicitly provides that the locum tenens providers, including Plaintiff, are not SRHC's employees. (SOF 15d) Plaintiff was a board-certified orthopedic surgeon with 22 years of experience in orthopedic trauma and orthopedic infections. (SOF 3) Plaintiff exercised complete autonomy over his medical decisions and treatment of patients. (SOF 15f and 19) SRHC had no written agreement with Plaintiff, as it does with its employed physicians. (SOF 16) SRHC never paid Plaintiff any compensation and issued

10

no W2s or 1099's to Plaintiff. (SOF 22) Plaintiff's tax returns confirm that Plaintiff held himself out to be a sole proprietor in relation to the services he provided to SRHC and others – Plaintiff claimed over $200,000 in business related expenses during the year he provided services at SRHC. (SOF 23) SRHC never provided Plaintiff any employment benefits, as it does for its employed physicians. (SOF 17) Plaintiff and other locums were not required to attend the monthly POC meetings that the employed physicians attend. (SOF 18) Even Plaintiff's work schedule was made through communications between SRHC and LocumTenens.com as opposed to with Plaintiff directly. (SOF 20) In fact, when SRHC did discuss the possibility of Plaintiff becoming an employed physician, Plaintiff declined and specifically referenced the scheduling flexibility as the reason he preferred to remain a locum tenens provider. (SOF 24)

In short, the argument for Plaintiff being an employee of SRHC could not be less convincing. Indeed, if Plaintiff was SRHC's employee, then every physician member of any hospital medical staff must be an employee of each and every such hospital, which is absurd. See, SOF 2; *see also, e.g., McPherson v. HCA-HealthOne, LLC.*, 202 F. Supp. 2d 1156, 1167 (D. Colo. 2002)(doctor with staff privileges at several hospitals who was not paid by the hospital and received no benefits from the hospital was an independent contractor). SRHC's decision to direct LocumTenens.com to cease scheduling Dr. Benaissa for services pursuant to the Agreement was compliant with and contemplated under SRHC's Agreement with LocumTenens.com and was not within any employment context. As evidenced by the EEOC's dismissal of his Charge (SOF 25-26), Plaintiff simply cannot bring claims under Title VII arising out of what was plainly a non-employment-based relationship. Accordingly, it is respectfully submitted that Counts I, II, and III of Plaintiff's Complaint must be dismissed as a matter of law.

### B.   Plaintiff's Retaliation Claim Likewise Fails Because Plaintiff was not SRHC's Employee.

Kansas courts have recognized retaliation claims in the following circumstances, which all arise from an employment relationship: (1) filing a claim under the Kansas Workers Compensation Act, K.S.A. 44–501 *et seq;* (2) whistleblowing; (3) filing a claim under the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 (2006) *et seq.;* (4) exercising a public employee's First Amendment right to free speech on an issue of public concern; and (5) exercising an employee's rights under the Kansas Wage Payment Act, K.S.A. 44-313 *et seq.  See Campbell v. Husky Hogs, L.L.C.*, 292 Kan. 225, 228 (2011) (inventorying Kansas Public Policy exceptions to the employment at will doctrine (internal citations omitted)).  The *Campbell* Court noted that courts should permit the common-law tort of retaliatory discharge as a limited exception to the at-will employment doctrine only when it is "necessary to protect a strongly held state public policy from being undermined."  *Id* at 229.

As discussed in detail above, Plaintiff was clearly not an employee of SRHC.  No Kansas public policy provides for a retaliation claim by a non-employee.  *See, e.g. Hand v. Walnut Valley Sailing Club*, 6:10-CV-01296-SAC, 2011 WL 1113730, at *2 (D. Kan. Mar. 24, 2011) (noting that Kansas public policy providing protection to whistleblowers from retaliation is an exception to the rule of employment at will and has not been expanded to cover situations outside of the employee-employer relationship).

For the above and foregoing reasons, Plaintiff's retaliation claim must be dismissed as a matter of law.

## IV. CONCLUSION

Plaintiff was never an employee of SRHC. Plaintiff was an independent contractor – or "sole proprietor", as stated by Plaintiff on his tax returns – assigned to work at SRHC by a third-party vendor with whom SRHC contracted. SRHC never paid Plaintiff a nickel. Plaintiff meets practically <u>none</u> of the factors used under any analysis of determining employment. The uncontroverted facts provide no basis under which Plaintiff could assert with any degree of good faith that he was employed by SRHC. As a result, he has no claims against SRHC under Title VII or Kansas common law.

For the above and foregoing reasons, Defendant respectfully requests that the Complaint be dismissed and that Defendant be awarded its costs and attorneys' fees incurred herein pursuant to 42 U.S.C. § 1988(b).

Respectfully submitted,

/s/ Jared T. Hiatt
Peter S. Johnston    KS 18398
Jared T. Hiatt       KS 23526
CLARK, MIZE & LINVILLE, CHARTERED
129 South 8th Street, POB 380
Salina, Kansas 67402-0380
Tel. 785-823-6325
Fax 785-823-1868
Email psjohnston@cml-law.com
Email jthiatt@cml-law.com
Attorneys for Defendant
Salina Regional Health Center, Inc.

13

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 3rd day of July, 2020, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Larry G. Michel
Kennedy Berkley Yarnevich & Williamson, Chartered
119 West Iron Avenu, 7th Floor
Salina, KS 67402-2567
785-825-4674
lmichel@kenberk.com
Attorney for Plaintiff

                                            /s/ Jared T. Hiatt
                                            Jared T. Hiatt  KS 23526
                                            Peter S. Johnston  KS 18398
                                            Attorneys for Defendant
                                            Salina Regional Health Center, Inc.