IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RAFIK BENAISSA, M.D.,

    Plaintiff,

v.

SALINA REGIONAL HEALTH
CENTER, INC.,

    Defendant.

Case No. 5:19-cv-04080-HLT

## MEMORANDUM AND ORDER

Plaintiff Rafik Benaissa, M.D. worked as an orthopedic surgeon at Defendant Salina Regional Health Center, Inc. as a locum tenens physician. The relationship ended, and Plaintiff sued Defendant for race, religion, and national-origin discrimination under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act and retaliation under state law.

Defendant moves for summary judgment on all claims. Doc. 53. Defendant contends that Plaintiff's claims require Plaintiff to show that Defendant was his employer. Because Plaintiff was an independent contractor and not an employee, Defendant argues that he cannot show this essential element. Because the Court agrees that no reasonable jury could find that Defendant was Plaintiff's employer, the Court grants the motion and enters judgment in Defendant's favor on all claims.

**I.    BACKGROUND**[1]

Plaintiff is a board-certified orthopedic surgeon with 22 years of experience in orthopedic trauma and orthopedic infections. Defendant is a not-for-profit hospital in Salina, Kansas, with a

---

[1] For purposes of summary judgment, the following facts are uncontroverted or recited in the light most favorable to Plaintiff as the nonmoving party. Additional uncontroverted facts may be included in the analysis as appropriate.

medical staff and peer review committees that include physicians who are employed by Defendant and physicians who are not employed by Defendant and physicians who are in competing practice groups or economic competition with one another. All employed physicians have a written employment agreement with Defendant. And Defendant offers all employed physicians benefits such as health and dental insurance, retirement benefits, and paid time off.

Defendant was down to one orthopedic surgeon and needed coverage in that area, so it contacted LocumTenens.com ("LocumTenens"). Defendant had a contract with LocumTenens under which LocumTenens assigned physicians to work temporarily at Defendant. Although Defendant has contracted for locum physicians for short and long-term coverage, Defendant's contract with LocumTenens for Plaintiff's services was intended to be a short-term situation while Defendant recruited for a permanent placement. At the time Defendant contracted with LocumTenens for Plaintiff's services, Plaintiff was a permanent resident of Monte Carlo, Monaco, and had active or recently active medical licenses in eleven different states and staff privileges at several other hospitals.

Defendant's contract with LocumTenens states:

- LocumTenens.com is responsible for sourcing, screening, and selecting Plaintiff;

- LocumTenens.com is responsible for paying Plaintiff;

- LocumTenens.com is responsible for providing Plaintiff's medical malpractice insurance;

- Plaintiff is an independent contractor of LocumTenens.com;[2]

---

[2] In relevant part, the exact language is: "Contractors are independent contractors of [LocumTenens] and/or any one of its affiliates (including LT Medical, LLC). Contractors are not employees, agents or subcontractors of [LocumTenens]. Because Contractors are independent contractors, neither [LocumTenens], nor you, will be responsible for tax withholding or incurring employee social security payments, workers' compensation insurance, unemployment insurance or health insurance. All medical, healthcare, or clinical decisions or actions shall be solely those of the Contractor." Doc. 26-1 at § 7.0.

- Neither Defendant nor LocumTenens.com is responsible for tax withholding, employee social security payments, workers' compensation insurance, unemployment insurance, or health insurance;

- Plaintiff is solely responsible for all medical, healthcare, and clinical decisions;

- Defendant may request that Plaintiff be removed from service at any time "based on [Defendant's] reasonable dissatisfaction with the clinical performance or professional conduct of [Plaintiff]," or "at any time and for any reason," provided that LocumTenens receives at least 30 days prior written notice.[3]

Doc. 26-1.

Plaintiff began providing services at Defendant on February 1, 2018. Plaintiff did not enter into a written employment agreement with Defendant, and Plaintiff did not receive any benefits from Defendant such as health and dental insurance, retirement benefits, or paid time off. Defendant had certain shifts or blocks of times that needed coverage, and Defendant worked directly with LocumTenens to schedule Plaintiff's shifts. Defendant provided most of the medical tools Plaintiff used for surgeries, and Plaintiff was also able to request specific tools and equipment based on his personal preferences. Plaintiff did not have authority to hire or fire nurses or other employees and was required to comply with all of Defendant's medical staff policies[4] and procedures. Plaintiff performed all work for Defendant on Defendant's premises (either at the hospital or clinics) and did not practice at any other facilities during the time he worked for Defendant. Defendant granted him locum tenens privileges on February 6, 2018, for 120 days and approved his request to convert from locum tenens privileges to Associate Staff status privileges

---

[3] The Agreement further provides that "LocumTenens.com will not, in any event, remove a Contractor from or cancel an assignment for illegal or discriminatory reasons." Doc. 26-1 at § 5.3.

[4] There is no evidence in the record that Plaintiff was subject to Defendant's <u>employment</u> policies and procedures, as he did not receive any employment benefits from Defendant.

on May 31, 2018.[5] Throughout his time, Plaintiff had complete autonomy in determining what work needed to be done for his patients.

Defendant paid LocumTenens a specified fee for the services of assigned providers (like Plaintiff), and LocumTenens paid Plaintiff for his work at Defendant. Thus, Defendant made no monetary payments to Plaintiff and did not issue him an IRS Form W2 for 2018. In his 2018 tax return, Plaintiff did not list Defendant as his employer or as having issued him a Form W2 or Form 1099. Instead, Plaintiff submitted tax forms attesting that his income was derived from his sole proprietorship as an orthopedic surgeon with a business address in Monte Carlo, Monaco. He claimed $224,727.00 in business-related expenses for his sole proprietorship during the year he provided services for Defendant.

On December 27, 2018, Defendant's legal counsel sent a letter to LocumTenens providing notice that Defendant wanted to exercise its right to terminate its scheduled services with Plaintiff under the contract, effective in 30 days. Doc. 55-8. A few months later, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Defendant alleging that Defendant discriminated and retaliated against him based on his race, religion, and/or national original. The EEOC dismissed the charge for lack of jurisdiction and "no employee/employer relationship." Plaintiff subsequently filed this lawsuit.

## II.   STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v.*

---

[5]   Defendant's Bylaws provide that a physician may receive locum tenens privileges for a period not to exceed four months or 120 days of continuous service. If a locum physician exceeds that time, he or she must apply for full staff privileges.

4

*Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co*., 41 F.3d 567, 569 (10th Cir. 1994). An issue of material fact is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A "scintilla" of evidence in support of the plaintiff's position is insufficient because "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III.  ANALYSIS

Plaintiff alleges race, religion, and national-origin discrimination under Title VII and alleges unlawful retaliation under K.S.A. § 65-442(a) and/or public policy. Doc. 1 at 4-5. Defendant argues that all Plaintiff's claims require Plaintiff to show that Defendant was his employer. Because Plaintiff was an independent contractor and cannot show that Defendant was his employer, Defendant contends it is entitled to summary judgment on all claims. The Court agrees that no reasonable jury could find that Defendant was Plaintiff's employer and grants the motion.

**A.   Defendant is entitled to summary judgment on Plaintiff's Title VII claims because the uncontroverted evidence establishes that Defendant was not Plaintiff's employer.**

Plaintiff asserts three discrimination claims under Title VII. This statute prohibits an employer from discriminating against an employee because of the employee's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). The statute defines "employee" as "an individual employed by an employer." *Id*. at § 2000e(f). And it defines "employer" as a "person . . . who has fifteen or more employees" during a specified time. *Id.* at § 2000e(b).

5

This circular definition essentially leaves "employee" undefined as far as an employee is distinguished from an independent contractor. And the parties agree that Title VII covers employees but does not cover independent contractors. Thus, the principal issue before the Court is determining whether Plaintiff was employed by Defendant and covered by Title VII <u>or</u> was an independent contractor and not so covered.

To help fill this definitional void, the Tenth Circuit commonly uses the hybrid test to distinguish an employee from an independent contractor. *Knitter v. Corvias Military Living*, 758 F.3d 1214, 1225 (10th Cir. 2014).[6] This test focuses on the employer's right to control the "means and manner" of the worker's performance. *Id.* But it also looks at other factors including:

> (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties.

*Lambertsen v. Utah Dep't of Corr.*, 79 F.3d 1024, 1028 (10th Cir. 1996). In analyzing these factors, no single factor is conclusive, and courts must look at the totality of the circumstances surrounding the working relationship between the parties. *Id*.

After considering these factors and the totality of the circumstances, the Court concludes that no reasonable jury could find Plaintiff was an employee of Defendant. The occupation is

---

[6] Plaintiff does not reference the hybrid test, and instead contends that the proper criteria are set forth in Section 2-III of the EEOC Compliance Manual. *See* Doc. 55 at 9-10. But this is merely a technical disagreement, not a substantive one. Although worded differently, the factors quoted in the parties' respective briefs are substantially similar. The Court therefore uses the hybrid test endorsed by the Tenth Circuit.

6

orthopedic surgeon, which is a highly skilled occupation that is performed by specialists. Plaintiff has 22 years of experience, is board certified, has been licensed in eleven states, and agrees that he had complete autonomy in determining what work needed to be done for his patients. *See also* Doc. 26-1 at § 7.0 (stating that all "medical healthcare, or clinical decisions or actions shall be solely those of [Plaintiff]"). And, unlike all its employed physicians, Defendant did not have a written employment agreement with Plaintiff.

Instead, the only written contract is between Defendant and LocumTenens for the provision of services by LocumTenens's independent contractors. Defendant contacted LocumTenens about a short-term placement for an orthopedic surgeon. Plaintiff then performed services at Defendant for approximately one year before Defendant contacted LocumTenens to terminate its scheduled services with Plaintiff. During this year, Plaintiff was paid by LocumTenens (not Defendant), and Defendant scheduled Plaintiff's shifts through LocumTenens (not Plaintiff). Plaintiff did not receive any benefits from Defendant such as health and dental insurance, retirement benefits, or paid time off. And both Plaintiff and Defendant treated Plaintiff's taxes as if Plaintiff was an independent contractor. Specifically, Defendant did not withhold any taxes that were incident to an employment relationship and Plaintiff attested in his tax returns that his income derived from his sole proprietorship. These facts are core incidents that are inconsistent with employee status. *See Levitin v. Nw. Comm. Hosp.*, 923 F.3d 499, 501-02 (7th Cir. 2019); *Oestman v. Nat'l Farmers Union Ins. Co.*, 958 F.2d 303, 306 (10th Cir. 1992).

Plaintiff contends there are facts indicating otherwise and focuses most heavily on (1) his use of Defendant's tools and premises, (2) his work being part of Defendant's business, and (3)

7

Defendant's control over the number of hours he worked.[7] But these facts are not reliable indicators of employee status in this industry and do not alter the outcome.

First, Plaintiff did use Defendant's tools and premises for his work. But his use of such items is inherent in the medical field. *See Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 763 (8th Cir. 2014) (explaining that the "location of the work, and source of equipment and staff are not indicative of employee status because all hospital medical staff . . . must work inside the hospital using its equipment"); *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 262 (4th Cir. 1997) (explaining that whether "a doctor specializing in emergency medicine is an employee of the hospital or simply has privileges at the hospital, he must, in almost every case, use emergency room facilities provided by the hospital" to render his services); *Tsosie v. United States*, 452 F.3d 1161, 1164 (10th Cir. 2006) (noting that a physician is unlikely to "carry all relevant medical instruments in a black satchel" and is expected to "make full use of the hospital's physical facilities" when performing services). Thus, this fact is not a reliable indicator of employee status in this case.

Second, Plaintiff's work was part of Defendant's business. But, just like the above, so too is the work performed by an orthopedic surgeon (or any physician) who simply has privileges at Defendant. This fact is also not a reliable indicator of employee status in this case. *See Cilecek*, 115 F.3d at 262 (noting that some aspects of a physician's work are the same regardless of whether the physician is an employee or an independent contractor).

---

[7] Plaintiff lists twelve separate arguments in his opposition. Doc. 55 at 10-11. The three principal arguments identified by the Court capture, respectively, points 1-3, points 9-10, and points 6 and 11. Plaintiff's remaining points are discussed below. In addition, both parties include facts in their statement of facts that are not referenced in their argument section. The Court will not construct additional arguments for either party based on these facts and limits its review to the arguments advanced and supported by the parties.

8

Third, Defendant, in a sense, ultimately determined the number of hours Plaintiff worked. Defendant would contact LocumTenens about shifts for which it needed coverage. And LocumTenens, not Defendant, would then contact Plaintiff about availability. So Defendant controlled the maximum number of hours Plaintiff could work in that Plaintiff could not work unless Defendant requested coverage from LocumTenens. But Plaintiff could also turn down shifts. And although it is true that Plaintiff worked exclusively for Defendant during the relevant time, there is no evidence that Defendant required Plaintiff to work exclusively for Defendant. Rather, the uncontroverted evidence is that Plaintiff was licensed in several states and had privileges at other hospitals.

The additional arguments advanced by Plaintiff do not advance his case either.[8] Plaintiff argues Defendant had the right to assign additional work to him. But that argument is not supported by the record. It is true that Plaintiff worked at Defendant for a year, but that is not a particularly enduring relationship and it is undisputed that Defendant used a locum provider while it searched for permanent coverage for the position. Plaintiff argues he was paid per shift or assignment, but the specific details of Plaintiff's pay are not part of the record. The only record information is that the amount of compensation Plaintiff received from LocumTenens "was based on" how much he worked. Doc. 55-3. It is true that Plaintiff could not hire or fire nurses or other hospital employees, but it seems this fact supports a determination that Plaintiff was not an employee. Finally, Defendant ended the relationship by notifying LocumTenens under the terms of Defendant's contract with LocumTenens. Again, because Defendant did not directly terminate Plaintiff's

---

[8] Doc. 55 at 10-11 (arguments 4, 5, 7, 8, and 12).

9

employment and, instead, had to notify a third party with 30-day advance notice, this fact suggests Plaintiff was not an employee.[9]

After examining the relationship, the Court is left with the distinct conclusion that Defendant was not Plaintiff's employer and that no reasonable jury could conclude otherwise. Plaintiff is a highly skilled surgeon. Defendant retained his services under its contract with LocumTenens. Plaintiff was paid, taxed, and received benefits like an independent contractor. And most importantly, Plaintiff retained complete autonomy in determining treatment decisions for his patients. Indeed, there is no evidence that Defendant mandated procedures, dictated medicines, or otherwise micromanaged Plaintiff's care of his patients. Although he used Defendant's equipment and staff to care for his patients, this is not unique to employees in this industry. Because this relationship had the hallmarks of an independent contractor and not an employee, Plaintiff is outside the ambit of Title VII's antidiscrimination provisions. *See, e.g.*, *McGhee v. United States*, 2014 WL 896748 (W.D. Va. 2014) (holding that doctors who contracted with LocumTenens.com, LLC and were assigned to work temporarily as locum physicians were independent contractors and not the hospital's employees); *Faris v. United States*, 2014 WL 866485 (W.D. Va. 2014) (same); *Henry v. Adventist Health Castle Med. Ctr.*, 970 F.3d 1126 (9th Cir. 2020) (concluding that surgeon was not an employee); *Levitin v. Nw. Cmty. Hosp.*, 923 F.3d 499 (7th Cir. 2019) (concluding that physician with practice privileges was not an employee); *Avera St. Luke's Hosp.*, 768 F.3d at 762-63 (same); *Cilecek*, 115 F.3d at 261-63 (same); *Alexander v. Rush N. Shore Med.*

---

[9] Plaintiff relies on just one case to argue that he is an employee. *Jaffrey v. PorterCare Adventist Health Sys.*, 2017 WL 5624572 (D. Colo. 2017). But, as Plaintiff concedes, the court does not discuss the plaintiff's status as an employee. And the Court disagrees that *Jaffrey* inferred or recognized that the plaintiff was an employee. Rather the plaintiff in *Jaffrey* alleged that he was "discussing a contract position whereby he would work [for defendant] as an employee of the practice," but that he was subject to age discrimination and ceased working for defendant as a locum physician before said discussion materialized. *Id.* at *1 (emphasis added). Thus, *Jaffrey* does not establish that locum physicians should be considered employees.

*Ctr.*, 101 F.3d 487, 493 (7th Cir. 1996) (concluding physician was not an employee in part because he exercised independent discretion in patient care). Accordingly, the Court grants summary judgment to Defendant on Plaintiff's Title VII claims.

### B. Defendant is entitled to summary judgment as to Plaintiff's state-law retaliation claim because Plaintiff was not Defendant's employee.

Plaintiff's only remaining claim is retaliation under Kansas state law. Defendant argues that this claim fails for the same reasons because Kansas law limits retaliation claims to employees. Because Plaintiff was not Defendant's employee, Defendant argues summary judgment is warranted. Doc. 54 at 12. The Court agrees.

In Kansas, a claim for retaliation is an exception to the State's employment-at-will doctrine, "which allows <u>employers</u> to terminate <u>employees</u> for good cause, for no cause, or even for wrong cause." *Goodman v. Wesley Med. Ctr., L.L.C.*, 78 P.3d 817, 821 (Kan. 2003) (emphasis added). As an exception to the employment-at-will doctrine, "the tort has not been expanded to cover situations outside the traditional employee-employer relationship." *Hand v. Walnut Valley Sailing Club*, 2011 WL 1113730, at *2 (D. Kan. 2011); *see also Zinn v. McKune*, 143 F.3d 1353, 1360 (10th Cir. 1998) (affirming rejection of plaintiff's whistleblower retaliation claim because defendant was not plaintiff's employer under state law).

Kansas courts principally use the "right to control" test to determine whether a worker is an independent contractor or employee. *Olds-Carter v. Lakeshore Farms, Inc.*, 250 P.3d 825, 833 (Kan. Ct. App. 2011). This test asks who has the right to direct what work will be done and when and how the work will be performed. *Id.* Although worded differently, the right-to-control test focuses on the same issues as the Tenth Circuit's hybrid test, and the parties agree that the analysis is the same under both tests. Thus, for all the reasons discussed above, *see supra* Section III.A.,

the Court concludes that Defendant was not Plaintiff's employer under Kansas law and that no reasonable jury could conclude otherwise.

Plaintiff attempts to avoid this ruling by arguing that his retaliation claim is alternatively brought under K.S.A. § 65-442(a), which he explains does not require an employee-employer relationship.[10] But this argument overlooks that his claim remains <u>a retaliation claim</u> and that, under state law, such claims are an exception and are limited to the employee-employer context. Plaintiff does not cite case law to the contrary, and K.S.A. § 65-442(a) does not change this outcome or modify the exception. Instead, this statute and the other one cited by Plaintiff outline immunities or protections available to an employer. *See* K.S.A. § 65-442(a) (providing limited liability for medical care facilities and certain officials if such member acted in good faith); K.S.A. § 65-4909 (providing limited liability for certain health care providers for any good-faith investigations or communications regarding the quality, quantity or cost of care being given patients). Stated differently, these statutes further limit when an employee can bring a retaliation claim and do not expand it. Thus, this argument does not save Plaintiff's claim.

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 53) is GRANTED. Judgment is to be entered for Defendant on all claims.

IT IS SO ORDERED.

Dated: October 23, 2020   /s/ *Holly L. Teeter*
  HOLLY L. TEETER
  UNITED STATES DISTRICT JUDGE

---

[10] The Court questions whether this argument is timely or preserved. At various points throughout this case, the parties have indicated that the employer-employee relationship is dispositive. For Plaintiff to now argue otherwise seems inconsistent with how this case has been presented.